1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JOHN R. S. SMITH,

                            Plaintiff,

        v.

CAROLYN W. COLVIN, Commissioner of
Social Security, [1]

                            Defendant.

Case No. 3:12-cv-05626-KLS

ORDER AFFIRMING DEFENDANT'S
DECISION TO DENY BENEFITS

Plaintiff has brought this matter for judicial review of defendant's denial of his

application for supplemental security income ("SSI") benefits.  Pursuant to 28 U.S.C. § 636(c),

Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have

this matter heard by the undersigned Magistrate Judge.  After reviewing the parties' briefs and

the remaining record, the Court hereby finds that for the reasons set forth below, defendant's

decision to deny benefits should be affirmed.

FACTUAL AND PROCEDURAL HISTORY

On March 19, 2009, plaintiff filed an application for SSI benefits, alleging disability as of

May 1, 2000, due to mental problems and an attention deficit hyperactivity disorder. See

Administrative Record ("AR") 11, 132.  That application was denied upon initial administrative

review on July 16, 2009, and on reconsideration on November 18, 2009. See AR 11.  A hearing

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of the Social Security
Administration.  Therefore, under Federal Rule of Civil Procedure 25(d)(1), Carolyn W. Colvin is substituted for
Commissioner Michael J. Astrue as the Defendant in this suit.  **The Clerk of Court is directed to update the
docket accordingly.**

ORDER - 1

was held before an administrative law judge ("ALJ") on March 7, 2011, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. See AR 28-62.

In a decision dated March 24, 2011, the ALJ issued a decision in which plaintiff was determined to be not disabled. See AR 11-23.  Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on May 11, 2012, making the ALJ's decision the final decision of the Commissioner of Social Security (the "Commissioner"). See AR 1; see also 20 C.F.R. § 416.1481.  On August 1, 2012, plaintiff filed a complaint in this Court seeking judicial review of the Commissioner's decision. See ECF #3.  The administrative record was filed with the Court on November 6, 2012. See ECF #11.  The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues the Commissioner's final decision should be reversed and remanded for further administrative proceedings, because the ALJ erred: (1) in evaluating the medical opinion source evidence in the record; (2) in discounting plaintiff's credibility; (3) in evaluating the lay witness evidence in the record; (4) in assessing plaintiff's residual functional capacity; and (5) in finding plaintiff could perform other jobs existing in significant numbers in the national economy.  For the reasons set forth below, the Court disagrees that the ALJ erred in determining plaintiff to be not disabled, and therefore finds that defendant's decision should be affirmed.

<u>DISCUSSION</u>

The determination of the Commissioner that a claimant is not disabled must be upheld by the Court, if the "proper legal standards" have been applied by the Commissioner, and the "substantial evidence in the record as a whole supports" that determination. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); see also Batson v. Commissioner of Social Security Admin., 359 F.3d 1190, 1193 (9th Cir. 2004); Carr v. Sullivan, 772 F.Supp. 522, 525 (E.D.

ORDER - 2

Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.") (citing <u>Brawner v. Secretary of Health and Human Services</u>, 839 F.2d 432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (citation omitted); <u>see also</u> <u>Batson</u>, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." <u>Sorenson v. Weinberger</u>, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. <u>Allen v. Heckler</u>, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (quoting <u>Rhinehart v. Finch</u>, 438 F.2d 920, 921 (9th Cir. 1971)). [2]

I.    <u>The ALJ's Evaluation of the Medical Opinion Source Evidence in the Record</u>

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. See <u>Reddick v. Chater</u>, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and

---

[2] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached. If the [Commissioner]'s findings are supported by substantial evidence, the courts are required to accept them. It is the function of the [Commissioner], and not the court's to resolve conflicts in the evidence. While the court may not try the case de novo, neither may it abdicate its traditional function of review. It must scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are rational. If they are . . . they must be upheld.

<u>Sorenson</u>, 514 F.2d at 1119 n.10.

ORDER - 3

resolution of conflicts" are solely the functions of the ALJ. <u>Sample v. Schweiker</u>, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." <u>Morgan v. Commissioner of the Social Sec. Admin.</u>, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." <u>Id.</u> at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." <u>Reddick</u>, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." <u>Id.</u> The ALJ also may draw inferences "logically flowing from the evidence." <u>Sample</u>, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." <u>Magallanes v. Bowen</u>, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." <u>Id.</u> at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. <u>Vincent on Behalf of Vincent v. Heckler</u>, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." <u>Id.</u>; <u>see also</u> <u>Cotter v. Harris</u>, 642 F.2d 700, 706-07 (3rd Cir. 1981); <u>Garfield v. Schweiker</u>, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of

ORDER - 4

those who do not treat the claimant. See Lester, 81 F.3d at 830.  On the other hand, an ALJ need

not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and

inadequately supported by clinical findings" or "by the record as a whole." Batson v.

Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); see also Thomas v.

Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir.

2001).  An examining physician's opinion is "entitled to greater weight than the opinion of a

nonexamining physician." Lester, 81 F.3d at 830-31.  A non-examining physician's opinion may

constitute substantial evidence if "it is consistent with other independent evidence in the record."

Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

   A.   Dr. Carollo

Plaintiff takes issue with the ALJ's following findings:

Consultative examiner [Thomas C.] Carollo[, M.D.,] stated [in his July 2,
2009 evaluation report] that the claimant presented as organized and intact
and performed reasonably well on mental status examination.  Accordingly,
he opined that the claimant appeared capable of performing simple and
repetitive tasks.  He stated that although the claimant was cooperative during
the examination, given his history, it was unclear if he could accept
instructions from supervisors or interact with coworkers and the public.  Dr.
Carollo stated that given the claimant's inability to maintain employment, it
was unlikely that he could perform work activity on a consistent basis,
maintain regular attendance in the workplace, complete a normal workday or
workweek without interruption, or deal with the usual stress encountered in a
competitive work environment (Ex. 6F).  I do not find Dr. Carollo's opinion
persuasive for several reasons.  First, it is not consistent with the essentially
unremarkable mental status examination findings of record, therefore
suggesting that the doctor relied on the claimant's subjective reports, which
are not credible, as discussed above.  In addition, treatment records
subsequently document improvement.  Finally, I note that the opinion is
inconsistent with the fact that Dr. Carollo assigned a global assessment of
functioning (GAF) score of 61, indicating only some mild symptoms or some
difficulty in social or occupational functioning, but generally functioning
pretty well (Ex. 6F/7).  Because Dr. Carollo's opinion is not consistent with
his own report or with the record considered as a whole, it is not given
significant weight.

ORDER - 5

AR 20.  Plaintiff argues these are not valid reasons for not giving more weight to Dr. Carollo's opinion.  The Court disagrees.

As noted by the ALJ, the mental status results Dr. Carollo obtained during his evaluation of plaintiff are essentially unremarkable. See AR 352-53; Batson, 359 F.3d at 1195 (ALJ need not accept opinion of even treating physician if it is inadequately supported by clinical findings). Plaintiff argues Dr. Carollo supported his opinion with his own observations, but does not state what those observations are that do so.[3]  Nor does there appear to be any such observations – at least ones based on objective clinical evidence – other than what is set forth in the essentially unremarkable mental status examination results Dr. Carollo obtained. See AR 349-55.  Further, given that the remainder of the information contained in Dr. Carollo's evaluation report does appear to be based largely on information plaintiff himself provided (see id.) – and because as discussed in greater detail below, the ALJ did not err in finding plaintiff to be less than fully credible in this case – the ALJ also did not err in discounting Dr. Carollo's opinion on this basis. See Morgan, 169 F.3d at 601 (physician's opinion premised to large extent on claimant's own accounts of her symptoms and limitations may be disregarded where those complaints have been properly discounted); Tonapetyan, 242 F.3d at 1149.

It is true as noted by plaintiff that in Ryan v. Commissioner of Social Security, 528 F.3d 1194 (9th Cir. 2008), the Ninth Circuit stated that "an ALJ does not provide clear and convincing reasons for rejecting an examining physician's opinion by questioning the credibility of the [claimant's] complaints where the [examining physician] does not discredit those complaints and supports his [or her] ultimate opinion with his [or her] own observations." Id. at 1199-1200.  The Court of Appeals, however, went on to note that there was "nothing in the record to suggest" the

---

[3] See Carmickle v. Commissioner of Social Sec. Admin., 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (issue not argued with specificity will not be addressed); Kim v. Kang, 154 F.3d 996, 1000 (9th Cir.1998) (matters not specifically and distinctly argued in opening brief ordinarily will not be considered).

examining physician in that case relied on the claimant's own "description of her symptoms . . . more heavily than his own clinical observations." Id. at 1200.  Such is not the case here, though, as just discussed.

The ALJ's remaining two reasons for rejecting Dr. Carollo's opinion are supported by the substantial evidence in the record as well.  For example, the medical evidence in the record does indicate significant improvement in plaintiff's mental health condition subsequent to the issuance of Dr. Carollo's evaluation report. See AR 437 (noting plaintiff reported "doing OK on present medication and need[ing] no change," "no periods of depression and anxiety," not being moody or irritable, no paranoia or hallucinations, and "OK" sleep); Batson, 359 F.3d at 1195 (ALJ need not accept physician's opinion if unsupported "by the record as a whole").  Lastly, as noted by the ALJ, the GAF score of 61 assessed by Dr. Carollo,[4] which indicates only mild symptoms or only some difficulty in social or occupational functioning, directly conflicts with the much more severe work-related limitations he included in his narrative report. See AR 353-54.

B.    Dr. Sands

Plaintiff also challenges the ALJ's rejection of the opinions issued by Richard E. Sands, M.D.  In regard to those opinions, the ALJ stated:

> In his [state agency] evaluations, Dr. Sands assessed moderate to marked limitations in both cognitive and social functioning (Exs. 2F/5; 4F/5, and 12F/6).  These limitations are given little weight for several reasons.  First, the cognitive limitations assessed are without any support.  As noted above, the record indicates that during the February 2009 evaluation, Dr. Sands did not perform any mental status examination related to the claimant's memory or concentration, but noted that he was fully oriented with average stream of

---

[4] A GAF score is "a subjective determination based on a scale of 100 to 1 of 'the [mental health] clinician's judgment of [a claimant's] overall level of functioning.'" Pisciotta v. Astrue, 500 F.3d 1074, 1076 n.1 (10th Cir. 2007) (citation omitted).  It is "relevant evidence" of the claimant's ability to function mentally. England v. Astrue, 490 F.3d 1017, 1023, n.8 (8th Cir. 2007).  "A GAF score of 61-70 reflects mild symptoms or "some difficulty[in social, occupational, or school functioning], but the individual 'generally function[s] pretty well.'" Sims v. Barnhart, 309 F.3d 424, 427 n.5 (7th Cir. 2002) (quoting American Psychiatric Association, Diagnostic & Statistical Manual of Mental Disorders 30 (4th ed. 1994)).

ORDER - 7

mental activity, normal speech, and intact abstract thought, insight, and judgment (Ex. 2F/11).  In addition, mental status examination findings in Dr. Sands' subsequent evaluations were essentially unremarkable and consistent with the residual functional capacity [the ALJ assessed] (Ex. 12F/9).  In addition, marked social limitations are not entirely consistent with the fact that Dr. Sands repeatedly stated that the claimant presented as cooperative with even mood and affect (Ex. 2F/11).  Moreover, it is significant that as explanation for both the cognitive and social limitations he assessed, Dr. Sands cited the claimant's self-report of symptoms and history (Exs. 2F/5, 9; 4F/5; and 12F/6).  Given that the claimant was not forthcoming with Dr. Sands regarding his substance abuse, his self reports are not credible and any limitations based on them are not persuasive.  It is also significant that during the February 2010 evaluation, Dr. Sands noted the claimant's report that he felt that he could work away from people, and opined that the claimant would likely improve with medications (Ex. 4F/5-6).  Given the lack of supportive findings and the reliance on the claimant's subjective reports, which are not reliable for the reasons discussed above, the limitations assessed by Dr. Sands are not given significant weight.

AR 20.  As with Dr. Carollo, the ALJ properly relied on the fact that the functional limitations Dr. Sands assessed were not supported by the objective clinical findings he provided, including his mental status examination results.  See AR 251-60, 418-25; Batson, 359 F.3d at 1195 (ALJ need not accept opinion of physician if inadequately supported by clinical findings).  Given that it does appear from the comments Dr. Sands made that, as the ALJ also found, he relied on the self-reports of plaintiff, this too was a valid basis for rejecting the limitations Dr. Sands assessed.  See id.; Morgan, 169 F.3d at 601; Tonapetyan, 242 F.3d at 1149.  Again as with Dr. Carollo, the ALJ did not err in pointing out as well that Dr. Sands seems to have relied on plaintiff's self-reporting concerning the state of his sobriety, which lack consistency.  See AR 251-60, 418-25.  Nor did the ALJ err in noting plaintiff's own admission that he could work away from people conflicts with the many marked limitations Dr. Sands found indicating an overall inability to perform work-related functions and therefore a finding of disability.  See id.  As such, the Court declines to find fault with the ALJ's findings here.

ORDER - 8

C.      Dr. Harmon

Lastly in terms of the medical opinion evidence in the record, plaintiff argues the ALJ

erred in finding as she did in regard to the opinion of Dana Harmon, Ph.D.:

> In his May 2010 [state agency] evaluation, Dr. Harmon assessed moderate
> limitations in the claimant's ability to understand, remember, and follow
> complex instructions and to perform routine tasks, and marked limitations in
> his ability to learn new tasks and to exercise judgment and make decisions.
> Dr. Harmon stated that the claimant had problems with concentration and
> tangential thinking during the evaluation and was unable to follow a three-step
> verbal command (Ex. 4F/30).  Dr. Harmon's assessment is given some weight
> to the extent that it is consistent with the residual functional capacity for
> simple, unskilled tasks.  However, the assessment is not given significant
> weight because as discussed above, in contrast to Dr. Harmon's report, other
> mental status examinations of record revealed essentially unremarkable
> findings.  As to social functioning, Dr. Harmon assessed moderate limitations
> in the claimant's ability to relate appropriately to co-workers and supervisors,
> and marked limitations in his ability to interact appropriately in public
> contacts, to respond appropriately to and tolerate the pressures and
> expectations of a normal work setting, and to maintain appropriate behavior in
> a work setting (Ex. 4F/30).  I do not find these limitations entirely persuasive.
> Although Dr. Harmon noted that the claimant presented as anxious and
> overwhelmed, it is significant that he has not consistently presented that way
> during other evaluations, which raises concerns regarding the reliability of the
> claimant's reports to Dr. Harmon, especially in light of the other credibility
> concerns discussed above.  In addition, it is significant to note that the
> claimant subsequently denied any significant symptoms after he started taking
> Ritalin, which indicates that his condition improved.  Regardless, the
> limitation against significant public contact adequately accommodates the
> claimant's social difficulties.  The remainder of the support provided by Dr.
> Harmon regarding the limitations consists of the claimant's subjective reports
> regarding his symptoms and his self-reports on subjective ratings measures,
> both of which are insufficient support for the limitations assessed, and given
> the misrepresentations the claimant made to Dr. Harmon regarding his
> substance abuse, his subjective reports are not reliable.  For all of these
> reasons, Dr. Harmon's opinion is not consistent with the record and is
> therefore not given significant weight.

AR 21.  As he did in regard to the ALJ's evaluation of the opinions of Dr. Carollo and Dr. Sands,

plaintiff argues the ALJ erred in discounting Dr. Harmon's opinion because of that psychiatrist's

apparent reliance on his subjective self-reports.  But as noted by the ALJ and as discussed above,

ORDER - 9

objective clinical findings obtained by other medical sources in the record, including those of Dr. Carollo and Dr. Sands, are largely unremarkable in direct contrast with those of Dr. Harmon. See AR 242-43, 259-60, 283-85, 306-07, 352-53, 424-25, 438; Batson, 359 F.3d at 1195. Thus, the ALJ did not err in also noting that Dr. Harmon's apparent reliance on plaintiff's self-reporting regarding his subjective complaints calls his opinion into question, in light of plaintiff's lack of credibility regarding those complaints as well as his substance abuse. Nor, as discussed above in regard Dr. Carollo's opinion, did the ALJ err in relying on the fact that plaintiff saw significant improvement subsequent to Dr. Harmon's opinion. See AR 437.

D.      The ALJ's Reliance on State Agency Psychologist Consultants Opinions

Plaintiff argues the ALJ's rejection of the above medical opinion source evidence "begs the question of what medical evidence the ALJ *did* rely on in forming his opinion, since the ALJ is not a medical expert." ECF #17, p. 9 (emphasis in original). The ALJ, however, expressly stated that she was relying on the opinion of the "[s]tate agency psychologist consultants who reviewed the record" and found plaintiff was able to "understand, remember, and complete simple tasks," could "interact with a supervisor and a few co-workers, but not the public," and would "benefit from a predictable routine." AR 20; see also AR 358-59, 377, 439. The ALJ gave that opinion "significant weight" because it was "based on a review of the record," had "adequately considered the credibility issues raised by [plaintiff's] inconsistent reporting," and was "consistent with mental status examination findings." AR 20.

As noted above, the opinions of non-examining medical sources constitute substantial evidence if they are "consistent with other independent evidence in the record." Lester, 81 F.3d at 830-31; Tonapetyan, 242 F.3d at 1149. That "other independent evidence in the record" consists of among other things – as pointed out by the ALJ and discussed above – the essentially

ORDER - 10

unremarkable mental status examinations generally appearing in the record, which support the less restrictive mental functional limitations found by the state agency psychologist consultants. It also consists of the credibility issues concerning, and inconsistent self-reports from, plaintiff, which also as discussed above properly call into question the far more severe mental functional limitations found by Drs. Carollo, Sands and Harmon.  Accordingly, the ALJ did not improperly substitute his lay opinion for those of the medical sources in the record.[5]

II.      The ALJ's Assessment of Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ. See Sample, 694 F.2d at 642.  The Court should not "second-guess" this credibility determination. Allen, 749 F.2d at 580.  In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. See id. at 579.  That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. Tonapetyan , 242 F.3d at 1148.

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." Lester, 81 F.3d at 834 (citation omitted).  The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." Id.; see also Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).  Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.2d at 834.  The evidence as a whole must support a finding of malingering. See O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of

---

[5] See Gonzalez Perez v. Secretary of Health and Human Services, 812 F.2d 747, 749 (1st Cir. 1987) (ALJ may not substitute own opinion for opinion of physician); McBrayer v. Secretary of Health and Human Services, 712 F.2d 795, 799 (2nd Cir. 1983) (ALJ cannot arbitrarily substitute own judgment for competent medical opinion).

ORDER - 11

credibility evaluation," such as reputation for lying, prior inconsistent statements concerning

symptoms, and other testimony that "appears less than candid." <u>Smolen</u>, 80 F.3d at 1284.  The

ALJ also may consider a claimant's work record and observations of physicians and other third

parties regarding the nature, onset, duration, and frequency of symptoms. <u>See</u> <u>id.</u>

      Plaintiff argues the ALJ did not give legally sufficient reasons for finding him to be less

than fully credible.  The undersigned disagrees.  The ALJ in this case discounted the credibility

of plaintiff in part due to the inconsistency between his subjective complaints and the objective

medical evidence in the record, including the unremarkable mental status examination findings

discussed above, which was proper. <u>See</u> AR16-18; <u>Regennitter v. Commissioner of SSA</u>, 166

F.3d 1294, 1297 (9th Cir. 1998) (determination that claimant's complaints are "inconsistent with

clinical observations" can satisfy clear and convincing requirement).  This specific basis for not

finding him credible has not been specifically challenged by plaintiff.

      The ALJ also discounted the credibility of plaintiff because he did not pursue significant

treatment for his alleged disabling impairments, failed to follow through with treatment, and saw

improvement on the limited treatment he did receive. <u>See</u> AR 17-18.  Failure to assert a good

reason for not seeking – or following a prescribed course of – treatment "can cast doubt on the

sincerity of the claimant's pain testimony." <u>Fair v. Bowen</u>, 885 F.2d 597, 603 (9th Cir. 1989);

<u>see</u> <u>also</u> <u>Burch v. Barnhart</u>, 400 F.3d 676, 681 (9th Cir. 2005) (upholding ALJ in discounting

claimant's credibility in part due to lack of consistent treatment, noting fact that claimant's pain

was not sufficiently severe to motivate her to seek treatment, even if she had sought some

treatment, was powerful evidence regarding extent to which she was in pain); <u>Meanal v. Apfel</u>,

172 F.3d 1111, 1114 (9th Cir. 1999) (ALJ properly considered  failure to request serious medical

treatment for supposedly excruciating pain).  The ALJ also may discount a claimant's credibility

ORDER - 12

1    on the basis of medical improvement. See Morgan, 169 F.3d at 599; Tidwell v. Apfel, 161 F.3d

2    599, 601 (9th Cir. 1998).

3           In finding as she did above, the ALJ specifically noted that although plaintiff "applied for

4    disability benefits in March 2009, he did not receive any mental health treatment for a significant

5    period thereafter." AR 17.  It is true as plaintiff points out that the Ninth Circuit has stated the

6    fact that a claimant does "not seek treatment for a mental disorder until late in the day," is not a

7    proper basis upon which to discount the accuracy of a medical source's assessment thereof.

8    Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996) (noting that those with depression often

9    do not recognize their condition reflects potentially serious mental illness) (citing Blankenship v.

10   Bowen, 874 F.2d 1116, 1124 (6th Cir.1989) (holding invalid rejection of claimant's assertions

11   concerning depression due to failure to seek psychiatric treatment, finding questionable practice

12   of chastising one with mental impairment exercising poor judgment in seeking rehabilitation)).

13   Here, though, the ALJ did not discount any medical source opinion in the record on this basis,

14   nor is there any evidence plaintiff's mental condition caused him to not seek treatment.  Plaintiff

15   also asserts she did seek mental health treatment earlier than the ALJ stated, citing to portions of

16   the record showing she underwent evaluations performed in January, February and April 2009.

17   See ECF#17, p. 12 (citing AR 251, 255, 261, 319).  But none of those evaluations actually were

18   for the purpose of obtaining such treatment. See AR 251, 255, 261, 319.

19          The ALJ further discounted plaintiff's credibility because of his inconsistent self-reports

20   concerning substance abuse, including those made to medical sources. See AR 18-19.  While

21   plaintiff does not dispute such inconsistency, he argues this alone is not a proper basis for finding

22   him to be not entirely credible.  First, as discussed elsewhere herein, the ALJ provided other

23   valid reasons for discounting plaintiff's credibility.  Second, the fact that plaintiff was

ORDER - 13

1   inconsistent in his self-reports over a fairly significant period of time – including at the hearing

2   (see id.) – does call into question his veracity concerning other statements he made, including his

3   claims of disabling impairments and limitations, particularly as those reports clearly influenced

4   how the above examining medical opinion sources have viewed him in terms of his ability to

5   function. See Smolen, 80 F.3d at 1284 (ALJ may consider "ordinary techniques of credibility

6   evaluation," such as reputation for lying, prior inconsistent statements, and other testimony that

7   "appears less than candid").

8

9          Two other valid reasons the ALJ offered support his adverse credibility determination.

10  The ALJ discounted plaintiff's credibility on the basis that "he repeatedly told examining source

11  Dr. Sands that he believed he was capable of working away from people." AR 19.  Clearly such

12  an admission calls into question plaintiff's claim that he is incapable of performing all work as

13  noted above.  In addition, the ALJ pointed out that he "has essentially no work history, which

14  tends to suggest that his alleged inability to work is related to factors other than his allegedly

15  disabling mental impairments." Id. (internal citations omitted).  This too was a proper basis for

16  discounting plaintiff's credibility. See Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002)

17  (ALJ properly found extremely poor work history and lack of propensity to work in lifetime

18  negatively affected claimant's credibility regarding inability to work); Bruton v. Massanari, 268

19  F.3d 824, 828 (9th Cir. 2001) (ALJ properly discounted claimant's credibility in part due to fact

20  that he left his job for reasons other than his alleged impairment).

21

22  III.    The ALJ's Evaluation of the Lay Witness Evidence in the Record

23

24          Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must

25  take into account," unless the ALJ "expressly determines to disregard such testimony and gives

26  reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir.

ORDER - 14

2001).  In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably

germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly

link his determination to those reasons," and substantial evidence supports the ALJ's decision.

Id. at 512.  The ALJ also may "draw inferences logically flowing from the evidence." Sample,

694 F.2d at 642.

> In regard to the lay witness evidence in the record, the ALJ found:
>
> . . . The claimant's mother completed a Third Party Function Report in April 2009, when she stated that the claimant needed to be told to shave, shower, and eat.  The claimant's mother stated that the claimant was antisocial and believed that everyone was against him.  She said that he stayed by himself and could not hold a conversation.  The claimant's mother stated that the claimant had difficulty remembering, completing tasks, concentrating, understanding, and getting along with others (Ex. 6E).  The claimant's mother's statement is generally corroborative of the claimant's allegations.  However, the statement is not probative in terms of the ultimate issue of disability in light of the medical evidence and other factors.  For example, the claimant's mother likely relied to a significant extent on the claimant's subjective reports of his symptoms and limitations, which are not fully credible, as discussed above.  Further, the statement cannot outweigh the analysis of the objective evidence and the claimant's overall functional abilities.

AR 21.  Although he does not clearly state so, it appears plaintiff may be challenging the ALJ's

rejection of the above lay witness evidence in the record. See ECF #17, p. 13 ("The ALJ's failure

to properly consider Plaintiff's credibility was harmful [sic] the ALJ discredited all of Plaintiff's

subjective complaints, the medical opinions, and the lay witness statement because he believed

Plaintiff was not credible.").  As discussed above, though, the ALJ did not err in finding plaintiff

to be not fully credible.  Plaintiff, therefore, has not demonstrated the ALJ erred in rejecting the

lay witness evidence on this basis.[6]

---

[6] Where a claimant's testimony has been properly rejected, lay witness testimony that is similar thereto may be rejected for the same reasons used to reject the claimant's testimony. See Valentine v. Commissioner Social Security Administration, 574 F.3d 685 (9th Cir. 2009); Molina v. Astrue, 674 F.3d 1104, 1114 (9th Cir. 2012).

IV.    The ALJ's Assessment of Plaintiff's Residual Functional Capacity

Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 416.920.  If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. See id.  If a disability determination "cannot be made on the basis of medical factors alone at step three of that process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 *2.  A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. See id.

Residual functional capacity thus is what the claimant "can still do despite his or her limitations." Id.  It is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id.  However, an inability to work must result from the claimant's "physical or mental impairment(s)." Id.  Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id.  In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

The ALJ in this case found plaintiff had the residual functional capacity:

**. . . to perform a full range of work at all exertional levels but with nonexertional limitations.  The claimant has the mental capability to adequately perform the mental activities generally required by competitive, remunerative work as follows: to understand, remember, and carry out simple one to two-step instructions required of jobs classified at a specific vocational preparation (SVP) level of one or two, or**

ORDER - 16

**unskilled work.  The claimant would have the average or moderate ability to performed sustained work activities (i.e., can maintain attention and concentration, persistence and pace) in an ordinary work setting on a regular and continuing basis (i.e[.], eight hours a day for five days a week, or an equivalent work schedule) within customary tolerances of employers' rules regarding sick leave and absence, assuming that "moderate" is defined in its ordinary meaning of the word as "within reasonable limits; of average or medium quality."  The claimant can make judgments on simple work-related decisions, can respond appropriately to supervision, but should not be required to work in coordination with co-workers to accomplish the task, and can deal with changes all within a stable work environment not dealing with the general public as in a sales position or where the general public is frequently encountered as an essential element of the work process.  Incidental contact with the general public is not precluded.**

AR 15-16 (emphasis in original).  Plaintiff argues the above RFC assessment is not supported by substantial evidence in light of the ALJ's errors in evaluating the medical and other evidence in the record.  But because as discussed above the ALJ did not err in evaluating that evidence, the Court declines to find any error in regard to that assessment as well.

V.     The ALJ's Findings at Step Five

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. See Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 416.920(d), (e).  The ALJ can do this through the testimony of a vocational expert or by reference to defendant's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. See Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984).  The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. See

ORDER - 17

1    Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).  Accordingly, the ALJ's description of the

2    claimant's disability "must be accurate, detailed, and supported by the medical record." Id.

3    (citations omitted).  The ALJ, however, may omit from that description those limitations he or

4    she finds do not exist.  See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

5            At the hearing, the ALJ posed a hypothetical question to the vocational expert containing

6    substantially the same limitations as were included in the ALJ's assessment of plaintiff's residual

7    functional capacity. See AR 57-58.  In response to that question, the vocational expert testified

8    that an individual with those limitations – and with the same age, education and work experience

9    as plaintiff – would be able to perform other jobs. See AR 57-59.  Based on the testimony of the

10   vocational expert, the ALJ found plaintiff would be capable of performing other jobs existing in

11   significant numbers in the national economy. See AR 22-23.  Plaintiff argues the hypothetical

12   question the ALJ posed to the vocational expert did not contain all of his functional limitations,

13   because it was based on an erroneous RFC assessment.  Again, though, because the ALJ did not

14   err in assessing that RFC, no error has been shown here at step five as well.

15                                            CONCLUSION

16           Based on the foregoing discussion, the Court hereby finds the ALJ properly concluded

17   plaintiff was not disabled.  Accordingly, defendant's decision to deny benefits is AFFIRMED.

18           DATED this 2nd day of August, 2013.

19

20

21

22

23

24                                            Karen L. Strombom
                                              United States Magistrate Judge
25

26

ORDER - 18